UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN THOMAS,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____/

Case No. 1:24-cv-1261

Honorable Hala Y. Jarbou

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan.[1] The events about which he complains occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the MDOC and MDOC Director Heidi Washington in their official capacities. Plaintiff also sues Corrections Officers Unknown Duncan and Unknown Cunningham in their official and personal capacities. (Compl., ECF No. 1, PageID.1, 2.)

Plaintiff alleges that on July 6, 2024, the MDOC made Plaintiff's private medical information available to non-medical staff, who discussed the information within earshot of other prisoners, who brought the issue to Plaintiff's attention. (*Id.*, PageID.3.) Plaintiff learned that Defendant Duncan had stood outside of the chow hall telling her co-workers that Plaintiff had HIV. As a result of this conduct, Plaintiff's diagnosis became known to the general population, which caused Plaintiff social and emotional damage and resulted in him being assaulted. (*Id.*)

On September 1, 2024, Plaintiff had blood drawn, and the officer who was working in healthcare was told about Plaintiff's HIV status. (*Id.*) That officer then discussed this information with the regular officers on Plaintiff's unit, who began to treat Plaintiff differently by avoiding him, moving away from him, and making comments like, "I'm not handing you anything, I'm trying to stay clean." (*Id.*) Plaintiff asserts that this has damaged his social standing and caused him to suffer emotional distress. (*Id.*)

---

[1] MDOC Offender Tracking Information System https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=571060

Plaintiff asserts violations of the Fourteenth Amendment, as well as under the Health Insurance Portability and Accountability Act (HIPAA). (*Id.*) The Court also construes Plaintiff's complaint to raise an Eighth Amendment claim. Plaintiff seeks damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. HIPAA Claims

Plaintiff claims that the disclosure of his HIV status to non-medical persons violated HIPAA. However, the Court notes that HIPAA does not provide a private right of action. *Faber v. Ciox Health, LLC.,* 944 F.3d 593, 596–7 (6th Cir. 2019) (*citing Thomas v. Univ. of Tenn. Health Sci. Ctr. at Memphis*, No. 17-5708, 2017 WL 9672523, at *2 (6th Cir. Dec. 6, 2017)). Therefore, Plaintiff's HIPAA claims are properly dismissed.

### B. Defendant MDOC

Plaintiff fails to state a claim against the MDOC because the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Moreover, the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

### C. Defendant Washington

Plaintiff names Heidi Washington as a defendant in this case, but fails to allege facts showing that she took any action against him. Plaintiff merely suggests that because of her position as Director of the MDOC, Defendant Washington was responsible for the release of Plaintiff's medical information to non-medical prison employees. Government officials may not be held

liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Washington was aware of the release of Plaintiff's HIV diagnosis to non-medical prison employees, much less that she encouraged or condoned the release of such information, or authorized, approved or knowingly acquiesced in the conduct. Indeed, Plaintiff fails to allege any facts at all about her conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that she was personally involved in the events surrounding the release of Plaintiff's medical diagnosis to non-medical staff. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action against Defendant Washington is premised on nothing more than respondeat superior liability, he fails to state a claim against her.

Moreover, the Court notes that Plaintiff sues Defendant Washington in her official capacity only and is seeking only monetary damages as relief. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Furthermore, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore,

Plaintiff is not entitled to monetary damages against Defendant Washington in her official capacity.

Accordingly, for the reasons set forth above, Plaintiff fails to state any claim upon which relief may be granted against Defendant Washington.

### D.     Defendant Cunningham

Plaintiff names Corrections Officer Unknown Cunningham as a Defendant in this case. However, Plaintiff fails to mention this individual in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims against Defendant Cunningham fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Cunningham.

### E.  Defendant Duncan

#### 1.  Fourteenth Amendment

Plaintiff asserts that Defendant Duncan disclosed his personal information in violation of his right to privacy under the Fourteenth Amendment. Plaintiff alleges that Defendant Duncan stood outside of the chow hall and told co-workers about Plaintiff's HIV status, and that her statements were overheard by prisoners in the general population. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that as a result of this conduct, Plaintiff's diagnosis became known to the general population, which caused Plaintiff social and emotional damage and resulted in him being assaulted. (*Id.*) The Court notes that:

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599–600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.* at 599, 603–04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the latter interest, i.e. the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul*, and concluded

8

that "the Constitution does not encompass a general right to nondisclosure of private information." *Id*. at 1087–90. The court declined to "recognize a general constitutional right to have disclosure of private information measured against the need for disclosure," reasoning that "[t]he Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government . . . against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy." *Id*. at 1089–90. Consequently, the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id*. at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440. [2]

Applying these standards, the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to nondisclosure of personal information. *See, e.g.*, *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270–71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate

---

[2] In contrast to the Sixth Circuit, other circuits hold that the disclosure of some kinds of personal information requires the court to balance the government's interests in disclosure against the individual's interest in avoiding disclosure. *See, e.g.*, *Barry v. New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987); *Woodland v. Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (per curiam); *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). Although the Supreme Court recently contrasted the holding in *DeSanti* with the approach taken in the foregoing opinions, the Court declined to clarify the scope of a constitutional right to informational privacy. *See NASA v. Nelson*, 562 U.S. 134, 144-48 & n.9 (2011) (assuming, without deciding, that such a right existed in that case).

constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455–57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684 (nonconsensual disclosure at press conference of details of plaintiff's rape).

In *Lee*, plaintiff challenged a city's policy requiring its employees to disclose the nature of their illness to their immediate supervisors after taking sick leave. *Lee v. City of Columbus*, 636 F.3d 245, 261. The court noted that it had "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution." *Id*. The court upheld the policy, reasoning that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id*.

In a case similar to the instant one, the Sixth Circuit determined that the disclosure of an inmate's HIV-positive status to prison guards did not violate the inmate's rights under the Fourteenth Amendment. *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that the plaintiff's claim "is foreclosed by the letter and reasoning" of *DeSanti*). *But see Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (distinguishing *Wigginton* and holding that an inmate has a constitutionally protected interest in avoiding disclosure of his HIV-positive status to other inmates, subject to legitimate penological interests).

The logic of *DeSanti*, *Wigginton* and *Lee* forecloses Plaintiff's Fourteenth Amendment claim because the disclosure alleged by Plaintiff does not implicate a fundamental interest. There is no relevant distinction between the disclosure of an inmate's HIV status to prison guards, which the Sixth Circuit has held does not implicate a fundamental interest, *Wigginton*, 21 F.3d at 740, and the disclosure to other prisoners and prison officials as Plaintiff alleges here. *See, e.g.*, *Coleman v. Martin,* 63 Fed. App'x. 791, 792 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board does not state a claim for relief under § 1983); *Holden v. Mich. Dep't of Corr.*, 2012 WL 2317538, at *5 (W.D. Mich. June 18, 2012) (no Fourteenth Amendment violation where plaintiff alleged that prison employee disclosed his HIV status to other prison officials and inmates); *Reeves v. Engelsgjerd,* 2005 WL 3534906, at *4 (E.D. Mich. Dec. 23, 2005) (doctor did not violate prisoner's constitutional rights by discussing his medical condition with non-medical staff and in front of other inmates).

To the extent that *Moore* favors a different result, that decision is neither binding nor persuasive in light of other published Sixth Circuit authority both predating *Moore* (*Wigginton*), and post-dating *Moore* (*Lee*). *Moore* does not employ the fundamental-interest analysis required by *DeSanti*, *Lambert*, *Bloch*, and *Lee*, nor does it cite any Sixth Circuit opinion in support of its

11

holding. Instead, it expressly adopts the reasoning of the Third Circuit in *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001). *See Moore*, 379 F. App'x at 427 ("It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information." (quoting *Delie*, 257 F.3d at 317)). As the court in *Delie* recognized, however, the Sixth Circuit's decisions in *Wigginton* and *DeSanti* conflicted with its own. *Delie*, 257 F.3d at 319 n.7; *see Moore*, 379 F. App'x at 429 (Kethledge, J., dissenting). Even if the Court accepts the finding in *Moore* and *Delie* that a prisoner has an "interest" in protecting against disclosure of his HIV status to other inmates, it does not necessarily follow that such an interest is one of "constitutional dimension." *See Lambert*, 517 F.3d at 440.

In accordance with *DeSanti*, *Wigginton* and *Lee*, Plaintiff does not state a Fourteenth Amendment claim because the disclosure of his HIV status as alleged here does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment.

## 2.     Eighth Amendment

The Court also construes Plaintiff's complaint as asserting a claim under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

To the extent that Plaintiff is claiming that prison employees' comments about his HIV status and employees avoiding being close to him violated his Eighth Amendment rights, such conduct does not rise to the level of an Eighth Amendment violation.

Furthermore, Plaintiff makes a conclusory assertion that after Defendant Duncan was overheard talking about Plaintiff's HIV status with other prison employees, he was "assaulted." (Compl., ECF No. 1, PageID.3.) However, Plaintiff fails to allege any facts describing an assault, including the nature of the assault, the date and time that such an assault took place, or who was involved in the alleged assault. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff, therefore, also fails to state an Eighth Amendment failure-to-protect claim against Defendant Duncan.

Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendant Duncan.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma*

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 30, 2024                     /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE